Herron v. Hughes et als.

---

C. E. HERRON v. J. HUGHES, W. NICHOLS, AND P. NICHOLS.

AGREEMENT TO CONVERT PROPERTY.—A mere agreement between two or more persons to convert the property of another, without an actual intermeddling with it, does not give the owner a cause of action against the parties to the agreement.

CONSPIRACY WITHOUT DAMAGE NOT ACTIONABLE.—A simple conspiracy, however atrocious, unless it results in actual damage to the party, is not the subject of a civil action; but if the conspiracy be carried into execution and damage ensue, the damage is the ground of the action.

ACTIONS AGAINST TWO OR MORE PERSONS FOR JOINT WRONG.—Where two or more persons are sued for a joint wrong done, it may be necessary to prove a previous combination between them in order to secure a joint recovery; but it is not necessary to aver this previous combination in the complaint, and if averred, it is not to be considered as of the gist of the action.

SALE OF GOODS BY AGENT OF OWNER.—Where one is intrusted by another with goods with power to sell the same as the agent or clerk of the owner, a mere intention on his part to appropriate the proceeds to his own use, does not amount to a conversion of the goods; but while his agency continues, his sales, in pursuance of his authority, are valid and bind the owner.

WHEN PURCHASE OF GOODS FROM AGENTS IS A CONVERSION.—If one is intrusted with goods by the owner with power to sell the same at retail for the owner as his agent or clerk, and if he then sells the goods, in payment of his private debt, to one who has full knowledge of the owner's title and the agent's relation to the goods, the purchase made with this knowledge amounts to a conversion of the goods by the purchaser.

LEVY ON GOODS.—A levy made by a constable on goods which he does not see or have in his possession is void.

APPEAL from the District Court, Eleventh Judicial District, Placer County.

The answer was filed by the defendants, Nichòls, and they alone appealed.   Defendant, Hughes, made no defense.

The other facts are stated in the opinion of the Court.

*Tuttle & Fellows,* for Appellants.

*Hamilton & Arnold,* for Respondent, referred to Sedgwick on Measure of Damages, 98, 453, and *Dorsey* v. *Malone,* 14 Cal. 554.

By the Court, SHAFTER, J.

It is alleged in the complaint in this action :

That on the 1st of July, 1862, the plaintiff was engaged in business at Dutch Flat as a dealer in boots and shoes, etc., and that on that day his stock on hand was of the value of two thousand seven hundred dollars.

That on the 11th of July, 1862, and during a temporary absence of the plaintiff, Hughes commenced an action against him on a pretended and fictitious indebtedness of one thousand two hundred dollars, and caused the whole of plaintiff's said

stock to be attached in said action by the Sheriff, etc., who placed it in the hands of one Willetts, for safe keeping.

That Hughes went no further with the suit, nor has he made any attempt to prosecute the same to judgment.

That on the 17th of October, 1862, the defendants, W. and P. Nichols, held a pretended and void judgment against the plaintiff for two hundred dollars improperly recovered during the aforesaid absence of the plaintiff.

That they, with full knowledge of the fact that the claim of Hughes was a pretense and fraud, conspired with Hughes to obtain the property attached and then in the hands of Willetts as Sheriff's keeper, and to that intent fraudulently agreed with Hughes that said property should be sold on execution to be issued on said two hundred dollar judgment, and subject, ostensibly, to the prior attachment of Hughes. That said property should be bid off by one Merriman for eight hundred and eighty dollars, and that thereafter said Hughes should dissolve his attachment, when the property was to be divided amongst the conspirators.

That in fulfilment of this fraudulent scheme W. and P. Nichols took out execution upon their judgment and delivered it to the township constable for service, and instructed him to make " a pretended levy thereof upon the aforesaid property, which the said constable then and there did, without taking into his possession, or in any way interfering with, said property; and that, in pursuance of the further direction of said defendants, the constable, on the 23d day of October, 1862— the goods being still in Willett's possession—sold them in one lot, and boxed up they were, to Merriman, at eight hundred and eighty dollars, as previously arranged."

That both the constable and one of the defendants Nichols, announced at the auction that the property was offered for sale subject to Hughes' attachment for twelve hundred dollars.

That Hughes, pursuant to the corrupt agreement aforesaid, soon after the pretended sale caused his attachment to be released.

That the Sheriff thereupon " ordered Willets to surrender

said property to the plaintiff, and the same was, on or about the 25th day of October, 1862—the same being still the property of plaintiff—by said Willetts so surrendered as directed."

That "at the same time the property, by virtue of the said pretended sale, was unlawfully taken from the plaintiff by the defendants and converted to their own use." That since said conversion plaintiff has demanded the property and defendants refused to deliver it.

General damages are claimed to the amount of five thousand dollars.

The answer denies the allegations of the complaint and justifies the sale on the ground that it was made by virtue of an execution issued upon a judgment of a Justice of the Peace in favor of the defendant Nichols and against the plaintiff. That the property was struck off to Merriman October 23d, 1862, and that said defendants thereafter, on the 26th of January, 1863, bought the property of Hughes and Merriman, and received from them the possession of the goods, or rather the remnant thereof.

Trial by jury. Verdict—two thousand five hundred dollars "for value of the goods, and damages one thousand three hundred and thirty dollars." Motion for new trial denied. Appeal taken from the order and from the judgment.

1. Counsel differ as to what constitutes the *gravamen* of this action.

There are allegations in the complaint suggestive of the idea that the pleader intended to declare for a vexatious suit or malicious attachment, or for both. There are other allegations that suggest a conspiracy to depreciate the value of property to be offered at public sale, as a gist; and others still that look toward a mere conversion of the plaintiff's goods under circumstances of aggravation.

We consider that the only actionable injury disclosed in the complaint is a conversion by the defendants of the plaintiff's goods.

The averments respecting the attachment suit brought against the plaintiff by the defendant Hughes on the 11th of

July, 1862, show no cause of action against him; for it is not averred that the suit is at an end, nor that it was brought without probable cause.

The Nichols are not implicated by the complaint in the bringing of that suit, nor in the attachment. The goods attached had been lying in the hands of Willetts, as Sheriff's keeper, for more than three months before the Nichols are alleged to have had any notice even of the transaction in either one of its branches.

Nor does the corrupt agreement of October 17, 1862, to get a title, or colorable title, to the plaintiff's property, at less than its value, even when coupled with the averments showing that all the devices of that agreement were carried out, disclose an actionable injury. The devices were: 1st. A void judgment. 2d. Execution thereon. 3d. A delivery of the execution to a constable, who was to sell property not only not in his possession at the time, but beyond his official reach. 4th. A falsehood to be suggested, and which was in fact suggested to the bidders, that the sale was to be made subject to Hughes' attachment, when it had in fact been pre-arranged that if Merriman should buy in the property at eight hundred and eighty dollars, the attachment should be dissolved, for the joint benefit of the conspirators.

We have nothing here but a series of mere appearances, commencing with a judgment alleged to be void upon its face and ending with a sale of goods not in the custody of the official who made it, and who neither delivered, nor attempted to deliver, the goods to the purchaser (Drake on Attachment, Sec. 265), and who made no return of the sale on the execution. The whole proceeding was *vox et preterea nihil*. In substance it amounted to nothing more than a verbal agreement between three persons to take and convert the property of another. Such an agreement would not affect the right of property, nor would it amount to an intermeddling with it, nor to an exercise of dominion over it subversive of the dominion of the owner. (2 Mass. 398; 7 John. 254; 10 Shep. 326.) Fraud without damage, or damage without fraud, gives no

cause of action; it is only where both concur that an action lies.

A simple conspiracy, however atrocious, unless it results in actual damage to the party, never was the subject of a civil action; and though such conspiracy be charged, the averment is immaterial and need not be proved. (*Hutchins* v. *Hutchins,* 7 Hill, 179.)

Where two or more are sued for a wrong done, it may be necessary to prove previous combination in order to secure a joint recovery, but it is never necessary to allege it, and if alleged it is not to be considered as of the gist of the action. That lies in the wrongful and damaging act done. In *Laville* v. *Roberts,* 1 Ld. Raym. 378, Mr. Chief Justice Holt said: "An action will not lie for the greatest conspiracy imaginable if nothing be put in execution; but if the party be damaged the action will lie. From whence it follows that the damage is the ground of the action, which is as great in the present case as if there had been no conspiracy."

In the case at bar the Nichols and Merriman, prior to the constable's sale, were absolute strangers to the title and to the possession of the plaintiff's goods, and when that farce had been fully enacted they are found standing in that relation still. (*Parker* v. *Huntington et al.,* 2 Gray, 125.)

2. Assuming, then, that the complaint sets forth no other actionable injury than a conversion by the defendants of the plaintiff's goods, we shall proceed to consider that ground of claim in connection with sundry statements in the complaint and as it stands related to the proceedings at the trial.

The complaint states that Hughes, soon after the constable's sale, released his attachment, and that Willetts, the keeper, in obedience to the Sheriff's order, on the 25th of October surrendered the property to the plaintiff.

As soon as Hughes' attachment was dissolved it doubtless became the duty of the Sheriff to redeliver the property to the plaintiff, and according to the complaint that duty was performed promptly.

The next succeeding averment charges that "at the same

time [thereupon] the goods were unlawfully taken from the plaintiff by the defendants and converted by them to their own use."

The testimony of the plaintiff at the trial tended to prove that when he left Dutch Flat, in the fore part of July, 1862, he left his goods in the possession of Hughes, as his clerk, with authority to sell them in the course of a retail trade, and that after the release of Hughes' attachment Willetts delivered the goods to Hughes and Merriman.

The original agency of Hughes, under the plaintiff, at the time when he accepted a return of the goods, was still on foot. Hughes had not renounced his agency, the plaintiff had not revoked it, nor had it ended by act and operation of law. If Hughes had perpetrated any fraud upon his principal before the goods were returned to him, or if he meditated any fraud thereafter, that fact would not divest him of the powers with which the plaintiff had clothed him, nor relieve him of his trust obligations. The counsel of the plaintiff seem to have considered that the agency was on foot at the date of the redelivery of the goods to Hughes, for they put in no evidence to prove the averment that the goods were surrendered to the plaintiff, except the redelivery to Hughes. That the Sheriff could, on the ground of that redelivery, have defended an action brought by the plaintiff against him for the goods, or their value, there can be no doubt.

From these views it follows that the act of Hughes in taking the goods in his possession on the dissolution of his attachment, was not in itself considered an act of conversion; and that possession not being tortious, it follows that the Nichols, in facilitating a return of the goods to Hughes by paying the Sheriff's charges, did not make themselves wrongdoers.

It appears further from the plaintiff's evidence that immediately after the goods were delivered to Hughes, or to Hughes and Merriman, they proceeded to sell them in the course of a retail trade conducted in their own names, but under circumstances tending to prove that Hughes intended to appropriate the proceeds to his own use or that of his firm. Still, those

71

sales did not, to a legal intent, amount to a conversion of the goods by Hughes. Conversion does not lie in intention, but conduct. Hughes had a subsisting authority to sell, and to sell at retail, as previously stated. The wrong to the plaintiff is not to be found in the acts of sale, but in the failure of Hughes to account for the proceeds; and the liability of Hughes to account therefor, or of Hughes and Merriman, may be now enforced in a proper action. There can be no doubt that the proper parties who in good faith bought the plaintiff's goods at retail of Hughes, or of the firm of which he was a member, acquired a title to them as against the plaintiff. (Sto. Ag. 126, 127.)

The case shows that these sales so made by Hughes, or under his sanction, were continued until the 27th of January, 1863, when Hughes and Merriman transferred the residue of the plaintiff's goods to the Nichols for the purpose, in the first place, of satisfying, and in the happening of a certain contingency, for the purpose of securing a debt which they, Hughes and Merriman, were owing to them. The Nichols took possession of the goods under this contract, and thereafter, on demand made, they refused to deliver them to the plaintiff.

In transferring the balance of the goods to the Nichols for the purpose of paying or securing a private debt, Hughes transcended his powers, and the Nichols, in accepting the transfer, with a full knowledge of the plaintiff's title and of Hughes' true relation to the goods, converted them to their own use; and inasmuch as Hughes participated in the wrong, he is jointly responsible with them. (Sto. Agency, Sec. 437.)

This joint conversion by the defendants of the plaintiff's property, on the 27th of January, 1863, we consider to be the only actionable injury that the plaintiff, on his complaint and proofs, has sustained. The case shows that the defendants intended a fraud; that they adopted certain measures for the purpose of accomplishing it, and that they carried out those measures—but in legal judgment the fraud was without damage. The fraud culminated in the sale to Merriman; but that

was a sale without consequences affecting either the plaintiff's title or possession.

In the language of the plaintiff's counsel: "The levy of the constable was a fiction. The sale was a mockery, and void. The constable made no levy because he had no possession of the property, nor even had sight of it. He made no sale because he could make none. Before he could sell he must have levied; he must have had the right and possession and control of the property levied upon, after which he must have advertised and proceeded according to law to their sale. The purchaser at such void sale could acquire no title, and much less could a purchaser with full knowledge."

The subsequent release of the attachment was not a wrong, but the reverse, assuming that the suit of Hughes was groundless. Nor was the payment of the Sheriff's fees at all prejudicial to the plaintiff. If after the constable's sale any one had taken possession of the goods without authority so to do from the plaintiff, it would have amounted to a conversion; but they went immediately into the hands of Hughes, the plaintiff's agent—that is, into the plaintiff's possession, in legal effect, as averred in the complaint. The subsequent retail sales by Hughes were not unlawful, nor did the Nichols participate either in them or the proceeds.

We do not consider it necessary to review in detail the errors assigned. It is sufficient to say, that in the hurry of the trial the true theory of the plaintiff's case was misapprehended. This is manifested both by the tenor of the rulings and the instructions to the jury. Though the verdict may not be too large on the theory of wrong and damage on which the case was tried, nor too large when regarded as a chastisement for the chicanery that the defendants practiced in fact, and the actionable fraud which they attempted to perpetrate, still, under the narrower views entertained by us as to the true character and scope of the plaintiff's injuries, it cannot be considered otherwise than as excessive.

Judgment reversed and new trial ordered.