## Herman Felsenthal and Charles Kozminski

v.

## Ludwig Thieben.

*Alleged Conspiracy to Defraud Bank—Action against Depositor to Recover Overdrafts—Evidence—Instructions.*

In an action brought by bankers against a depositor to recover for moneys obtained from their bank by means of an alleged conspiracy between the defendant and their bookkeeper, it is *held:* That although the falsification of the defendant's account may have been for the sole purpose of aiding the bookkeeper to obtain the plaintiff's money, the defendant would be liable, if he loaned the bookkeeper his checks knowing that the money drawn on them was not to be charged to his account; that the fact that the bookkeeper falsified the defendant's account was one which it was essential for the jury to consider; and that an instruction to the effect that they might disregard the books as affecting the plaintiff's claim against the defendant, was erroneous.

[Opinion filed July 27, 1887.]

In error to the Superior Court of Cook County; the Hon. Joseph E. Gary, Judge, presiding.

Messrs. Eli B. Felsenthal and Moses, Newman & Reed, for plaintiffs in error.

Messrs. Kraus, Mayer & Brackett, for defendant in error.

Moran, J. The plaintiffs in error, who were bankers, brought this action against the defendant, seeking to recover

against him for moneys which were obtained from their bank by means of an alleged conspiracy between defendant, who was a depositor, and one Jacob Abeles, who was, at the time the money was obtained, the bookkeeper of the plaintiffs.

It was claimed by the plaintiffs that defendant entered into an arrangement with said bookkeeper, Abeles, by which checks should be drawn on plaintiffs by defendant, and the money on said checks obtained in the regular way from the paying teller, and that said checks should not be charged to defendant's account by Abeles on plaintiffs' books, but said checks should be concealed or destroyed when they should, in the course of business in the bank, come to the hands of said bookkeeper, and that by means of such conspiracy a large amount of money was abstracted from said plaintiffs' bank. Defendant denied any such conspiracy or any arrangement to obtain the money of the bank. The verdict and judgment below was for the defendant. The plaintiffs, to make out their case, introduced the deposition of Abeles, which tended to prove that Abeles was accustomed to borrow from time to time the check of defendant for various amounts, the understanding being that the check would be returned to defendant or destroyed by Abeles, and that it would not be charged against defendant, and that Abeles allowed defendant various considerable overdrafts.

The proof showed that checks of defendant paid by the bank were not charged against him as appeared by the ledger which was kept by Abeles, and that such checks were returned to defendant or were destroyed. The testimony of tellers who acted for the bank was introduced to identify entries and memoranda made by them in tellers' blotters, which tended to show the payment by them of various checks as the checks of defendant, and by comparison with the ledger and journal accounts it was shown that checks so paid by tellers as checks of defendant were not charged up in the account of defendant as kept by Abeles in the books of the bank.

The tellers' blotters, the journal and cash book, and depositors' ledger, so far as transactions purporting to be those of defendant with the bank were shown, were introduced in evi-

dence and were shown to have been kept by employes in the regular course of their daily duties in the bank, and except as to the ledger account kept by Abeles, there was no evidence tending to show that said books were in any manner falsified or that they contained false entries purposely made, or that entries that ought to appear therein were intentionally omitted.

It was shown by the testimony of Abeles that defendant's account was falsely kept in the ledger and a comparison of the ledger with other book entries tended to show the same thing.

The theory of plaintiffs was that these books contained a history of defendant's transactions with the bank and that the false entries, or omission of charges by Abeles in the ledger account of defendant, was evidence tending to establish in connection with the other evidence in the case a conspiracy between defendant and Abeles, as well as to show the amount abstracted through such conspiracy from the bank.

One of the main facts which plaintiffs sought to establish was that Abeles kept defendant's account with the bank in a false manner; that he made therein false entries and omitted entries which he should have made. All the entries in the bank's books made in the regular course of business showing the account of defendant with the bank, including the account of defendant as kept by Abeles, were manifestly competent for the consideration of the jury in determining whether in fact there had been a falsification of defendant's account by Abeles to the advantage of defendant's side of the account and against the bank. The fact that there was a falsification of defendant's account by Abeles was an important fact to support plaintiffs' theory, and if made out by the evidence, such false account could no more be disregarded by the jury in considering the question of defendant's liability than could the fact that defendant was a depositor in the bank. The court gave to the jury, on behalf of the defendant, the following instruction, numbered 9:

"The court instructs the jury that if they believe from the evidence that the books of account, or any of them, introduced in evidence in this case are not the true and correct statement which they purport to be, but have been falsified by Jacob

Abeles so that they are in fact untrue and incorrect statements of facts and that they have been so falsified by the said Jacob Abeles for the sole purpose of aiding him to wrongfully obtain the money of the plaintiffs and of concealing his, the said Abeles' wrong-doing in so doing, then the jury are at liberty to disregard the evidence of such books of account, or any of them, as affecting the claim of the plaintiffs against Ludwig Thieben, the defendant in this case."

This instruction was misleading and erroneous. It is so couched as to deprive plaintiffs of the benefit of all the entries in the books which the court permitted to go in evidence and to turn the fact that Abeles had falsified defendant's account, which in plaintiff's theory of the case was certainly a weapon of danger to defendant, into a shield for defendant's protection. If the falsification of defendant's accounts was for the sole purpose of aiding Abeles to obtain the bank's money and to conceal his wrong-doing, still if defendant loaned Abeles his checks, knowing that the money drawn on them was not to be charged in the account against him, he would be liable to the bank though he did not in fact at all profit by the transaction himself.

As the court told the jury in other instructions, if the defendant had no participation in the fraud of Abeles and did not give his checks to Abeles for the purpose of, or suspecting they would be used to defraud the plaintiffs, then defendant could not be held liable. But when inquiring into defendant's liability the fact that Abeles falsified defendant's account with the bank was a fact very essential to be considered by the jury, and to tell them that they might disregard the evidence of the books as affecting plaintiffs' claim against defendant, if they found to be the truth that which the books were introduced to establish, to wit, that they had been falsified by Abeles, was little less injurious to plaintiffs than it would have been to strike out all the evidence.

For the error in giving said instructions the judgment must be reversed and the case remanded.

*Reversed and remanded.*