[L. A. No. 6040. Department Two.—November 13, 1920.]

AMANDA J. REVERT, Respondent, v. ARTHUR T. HESSE et al., Appellants.

[1] Appeal—Delay in Filing Request for Preparation of Transcript—When Insufficient Ground for Dismissal.—A motion to dismiss an appeal upon the ground that notice to the clerk to prepare a transcript was not filed within the time prescribed by section 953a of the Code of Civil Procedure is without merit, where relief from the delay was applied for and obtained in the lower court, and the transcript certified and filed in the supreme court before the motion to dismiss was made.

[2] Pledge — Sale — Assignment — Rights of Pledgee.—While a pledgee to whom an evidence of debt has been pledged may collect the same when due or assign his interest in the collateral to an assignee, who thereupon acquires the rights of the pledgee, he cannot, without the consent of the pledgor, sell, compromise, or otherwise discharge the pledged debt or the security therefor.

[3] Id.—Wrongful Acts of Pledgee — Rights of Pledgor.—If a pledgee of evidence of an indebtedness sells or releases the debt or security otherwise than upon collection, the pledgor may set aside the sale or release, if other circumstances permit, or hold the pledgee for conversion.

[4] Id. — Release of Pledged Mortgages — Conversion. — Where pledged notes and the mortgages securing their payment are released without the consent of the pledgor and without foreclosure or other collection of the debts, there is a conversion of the pledged property.

---

2. Right of holder of collateral securities as restricted to his interest, note, 32 Am. St. Rep. 714.

Right of pledgee to sell pledge, note, Ann. Cas. 1916B, 237.

3. Necessity of tender of debt secured before action of conversion can be brought against pledgee, note, 10 Ann. Cas. 1125.

[5] ID.—RELEASE BY AGENTS — LIABILITY OF PRINCIPAL.—One for whom and subject to whose directions assignees of pledged mortgages act as trustees in taking the assignment and releasing the mortgages is liable for the conversion thus accomplished by him through his agents.

[6] CONSPIRACY—CAUSE OF ACTION.—Where two or more persons are sued for a civil wrong, it is the civil wrong resulting in damage, and not the conspiracy, which constitutes the cause of action.

[7] ID.—LIABILITY OF CONSPIRATORS.—In such an action, the major significance of the conspiracy lies in the fact that it renders each participant in the wrongful act responsible as a joint tort-feasor for all damages ensuing from the wrong, irrespective of whether or not he was a direct actor and regardless of the degree of activity.

[8] ID.—JOINT RECOVERY OF DAMAGES — RIGHT OF PLAINTIFF.—A plaintiff is entitled to a joint recovery of damages against such defendants as he can show have united or co-operated in inflicting a wrong upon him.

[9] ID.—CONVERSION OF PLEDGED MORTGAGES—CONSPIRACY TO DEFRAUD —SUFFICIENCY OF EVIDENCE.—In this action for damages for fraudulent conversion in securing the possession of and releasing of record two mortgages, the relationship of the parties and other circumstances were sufficient to justify the finding of the existence of a conspiracy among all of the defendants to defraud the plaintiff by a conversion of the pledged mortgages and disposition of the property freed from the encumbrances.

[10] ID.—LIABILITY OF TRUSTEES OR AGENTS FOR CONVERSION.—In an action for damages for the fraudulent conversion of pledged property, the fact that certain defendants acted solely as the trustees or agents of a codefendant does not constitute a valid defense, for a person is liable for his participation in a conspiracy, having for its object the commission of a wrongful act, even though he acts only as an agent for another and is unacquainted with the details of the scheme.

[11] ID.—LIABILITY OF CONSPIRATORS—BENEFIT FROM WRONGFUL ACT IMMATERIAL.—Those who aid in the commission of a wrongful act by another are liable for the resulting damages, although they expected no benefit from the wrongful act and in fact received none.

[12] CONVERSION—SECURITIES—MEASURE OF DAMAGES.—Where a note or other money securities have been converted, their owner is, *prima facie,* entitled to recover their face value with interest.

---

6. Gist of civil action for conspiracy, notes, Ann. Cas. 1914C, 763; Ann. Cas. 1917E, 289.

[13] ID.—CONVERTED DEBT—PLEDGE—MEASURE OF DAMAGES.—Where the converted debt was held by way of pledge, the amount due the pledgee on the principal debt must be deducted from the value of the debt converted.

[14] ID.—CONVERSION OF PLEDGED MORTGAGES — DAMAGES — WATER STOCK APPURTENANT TO LAND.—In fixing damages for the fraudulent conversion of pledged mortgages, water stock appurtenant to the mortgaged land, and owned by the mortgagor at the time of the execution of the mortgages, is to be regarded as held for the benefit of the land at the time of the conversion.

APPEAL from a judgment of the Superior Court of Los Angeles County. Leslie R. Hewitt, Judge. Affirmed.

The facts are stated in the opinion of the court.

John B. Haas for Appellants.

John E. Daly and James H. Daly for Respondent.

LENNON, J.—Action for damages for fraudulent conversion in securing the possession of and releasing of record two mortgages on premises consisting of eighty acres of land in Imperial County, California.

The motion to dismiss this appeal, which was made upon the ground that appellants' notice to the clerk to prepare a transcript was not filed within the time prescribed by section 953a of the Code of Civil Procedure, is without merit. In the cases relied upon by respondent in support of the motion there was no transcript on file in the supreme court, either for the reason that no transcript was prepared because no notice was given to the clerk, or for the reason that the trial judge refused to certify the transcript after it was prepared, on the ground that, while the notice to the clerk was filed, it was not filed within the time specified by section 953a of the Code of Civil Procedure. Under such circumstances it was held that the supreme court was without power to aid the appellant, because the granting of relief from failure to file such notice within the requisite time lay solely within the jurisdiction of the trial court. (*Estate of Keating,* 158 Cal. 109, [110 Pac. 109]; *Fiske* v. *Gosbey,* 168 Cal. 334, [143 Pac. 611]; *Brown* v. *Superior Court,* 175 Cal. 141, [165 Pac. 429].) [1] In the instant case, however, relief from the delay in filing the notice was not sought in the

supreme court, but was applied for and obtained in the lower court, and, the transcript having been certified by the trial judge and filed in the supreme court before the motion to dismiss the appeal was made, the case must be considered upon its merits.

Beginning with the execution of the two mortgages in question by Simon F. Flink in May, 1915, the complaint recounts the sequence of events culminating in the alleged conversion as follows: The mortgages in question were executed as security for two promissory notes of two thousand dollars each, given by said Simon Flink in part payment of the purchase price of the land hypothecated by the mortgages. The notes and mortgages were made in favor of Amanda J. Revert, the plaintiff, and one Isaac Bordner, as joint tenants with right of survivorship, and, upon the death of the latter in September, 1915, plaintiff became the sole owner thereof. Plaintiff subsequently transferred and assigned these notes, together with the mortgages upon the property in question, to one Edwin R. Gurnsey, as collateral security for the payment of a promissory note in the sum of $489.31, payable on demand, executed and delivered by plaintiff to said Gurnsey. On September 7, 1916, after the recording of the above-mentioned assignment, plaintiff's promissory note for the sum of $489.31 and the notes and mortgages held as collateral security therefor were assigned by Edwin Gurnsey to the defendant Sidney Beach, who, in turn, on September 12, 1916, assigned the said notes and mortgages to Walter Niolon. On September 14, 1916, Walter Niolon released the two Flink mortgages without notice to plaintiff or demand upon her for the payment of her note for $489.31, for which, as above stated, the mortgages were held as collateral security. Plaintiff has never received any of the money secured by the Flink mortgages.

Prior to the assignment of the notes and mortgages by Edwin Gurnsey to defendant Sidney Beach, to wit, on June 6, 1916, Simon Flink, the mortgagor, sold and conveyed the premises described in said mortgages, subject to the two mortgages aforesaid and to a prior mortgage in the sum of one thousand five hundred dollars in favor of Margaret Paine, to defendant Arvilla Hesse. About September 23, 1916, on which date the release of the Flink mortgages was recorded, defendant Arvilla Hesse and her husband, defendant Arthur

Hesse, borrowed the sum of two thousand five hundred dollars from one Charles Spitly, securing the payment of the same by the execution of a trust deed to the property described in the Flink mortgages. The premises were subsequently sold by defendants Arvilla and Arthur Hesse.

Arthur Hesse, Arvilla Hesse, and Sidney Beach were made defendants; plaintiff attempted to join Walter Niolon as defendant, but was unable to obtain personal service. The complaint further alleges that the assignment of the Flink mortgages by defendant Sidney Beach to Walter Niolon and the release by the latter were executed without consideration and that this assignment and release, together with the acts subsequent thereto, were had and done with the full knowledge and consent of each and all of said defendants, with the fraudulent intent of defrauding plaintiff by depriving her of her rights and privileges in and to the two mortgages and in pursuance of a conspiracy among all of the defendants to convert the notes and mortgages to their own use and to permit defendants Arthur and Arvilla Hesse to dispose of the premises freed from said encumbrances. It is further alleged, upon information and belief, that defendants Arthur and Arvilla Hesse agreed, upon the release of said mortgages, to place a new first mortgage or encumbrance upon the premises and "to divide any surplus derived from said new encumbrance after payment of said mortgage of Margaret N. Paine, and thereafter to sell said described premises, and divide the proceeds of such sale among said defendants.'' Damages are alleged in the sum of $3,606.17. The answer denies the allegations of conspiracy, conversion, and damages, and alleges, by way of an affirmative defense, that, at the time of the assignment to Sidney Beach, the notes of Simon Flink were worth no more than the amount for which they were assigned as collateral security, namely, $489.31. The trial court made its findings of fact in substantial accord with the allegations of the complaint and gave judgment against the defendants Arthur Hesse, Arvilla Hesse, and Sidney Beach, jointly and severally, for the sum of $3,606.17, which was the face value of the mortgage notes less the amount of the note for the payment of which they were held as collateral security, with interest thereon from September 23, 1916, from which judgment defendants appeal.

[2] While a pledgee to whom an evidence of debt has been pledged can collect the same when due, he cannot sell, compromise, or otherwise discharge the pledged debt; or the security therefor, without the consent of the pledgor. (Civ. Code, sec. 3006.) Such a pledgee may, of course, assign his interest in the collateral to an assignee, who thereupon acquires the rights of the pledgee (*Pease* v. *Fitzgerald,* 31 Cal. App. 727, [161 Pac. 506]), but, aside from this right of assignment, his control over the debt is limited to the right to hold the same and collect at maturity; [3] if he sells or releases the debt or security otherwise than upon collection, the pledgor may set aside the sale or release, if other circumstances permit, or hold the pledgee for conversion. (*Chester* v. *Hill,* 66 Cal. 480, [6 Pac. 132] ; *Kelly* v. *Matlock,* 85 Cal. 122, [24 Pac. 642] ; *Hunt* v. *Glassell,* 30 Cal. App. 676, [159 Pac. 227] ; *Traders' Bank etc.* v. *Wilcox,* 42 Cal. App. 24, [183 Pac. 256].) It is not disputed that the assignment by plaintiff to Edwin Gurnsey of the notes and mortgages executed by Simon Flink and the subsequent assignment thereof by said Gurnsey were assignments by way of pledge. It also appears from the evidence that defendants Sidney Beach and Arthur Hesse were fully informed as to the nature of these assignments. There was an attempt on the part of the defendants to prove that the attorneys who arranged the assignment for Gurnsey were also the attorneys for plaintiff and that these attorneys, at the time of the assignment by Gurnsey to Beach, were informed of and acquiesced in defendants' plan for releasing the mortgages. This attempt failed utterly, for not only was there no competent evidence that the attorneys in question were aware of defendants' purpose, but there was no proof that they were the attorneys for or in any way represented plaintiff at the time they arranged the assignment from Gurnsey to Beach. [4] Inasmuch as the pledged mortgages were released without the consent of the pledgor and without foreclosure or other collection of the debt immediately secured by them, there was a conversion of the pledged property in the instant case. [5] Moreover, inasmuch as it is admitted that the assignees, Sidney Beach and Walter Niolon, acted as trustees for defendant Arthur Hesse and subject to his directions in taking the assignments of the pledge and releasing the mortgages, defendant Arthur Hesse is liable for the conversion

thus accomplished by him through his agents. (*Horton* v. *Jack*, 126 Cal. 521, [58 Pac. 1051].) This proposition appears not to be seriously questioned by appellants, who rely primarily upon the contention that the evidence was insufficient to support the finding of conspiracy on the part of defendants Sidney Beach and Arvilla Hesse, and, therefore, that said defendants cannot be held jointly and severally liable for damages. Appellants also rely upon an alleged failure on the part of plaintiff to prove damage from the conversion.

[6] It is a general and well-settled principle of law that, where two or more persons are sued for a civil wrong, it is the civil wrong resulting in damage, and not the conspiracy, which constitutes the cause of action. (*Herron* v. *Hughes*, 25 Cal. 555; *Davitt* v. *Bakers' Union*, 124 Cal. 99, [56 Pac. 775]; *Dowdell* v. *Carpy*, 129 Cal. 168, [61 Pac. 948]; *Menner* v. *Slater*, 148 Cal. 284, [83 Pac. 35].) [7] In such an action, the major significance of the conspiracy lies in the fact that it renders each participant in the wrongful act responsible as a joint tort-feasor for all damages ensuing from the wrong, irrespective of whether or not he was a direct actor and regardless of the degree of his activity. (*Cohen* v. *Fisher*, 135 App. Div. 238, [120 N. Y. Supp. 546]; *White* v. *White*, 132 Wis. 121, [111 N. W. 1116]; *Miller* v. *John*, 208 Ill. 173, [70 N. E. 27].) [8] A plaintiff is entitled to a joint recovery of damages against such defendants as he can show have united or co-operated in inflicting a wrong upon him. (*Herron* v. *Hughes*, *supra*; *More* v. *Finger*, 128 Cal. 313, [60 Pac. 933]; *Nevin* v. *Gary*, 12 Cal. App. 1, [106 Pac. 422].)

"The law recognizes the intrinsic difficulty of proving a conspiracy. The allegations with reference to conspiracy are treated as matters of inducement leading up to a more particular description of the acts from which conspiracy may be inferred. . . . The conspiracy may sometimes be inferred from the nature of the acts done, the relation of the parties, the interests of the alleged conspirators, and other circumstances." (*Woodruff* v. *Hughes*, 2 Ga. App. 361, [58 S. E. 551]; *Jernigan* v. *Wainer*, 12 Tex. 189.) [9] In the present action, while plaintiff was unable to prove any formal agreement between defendants Arthur Hesse and Sidney Beach, nevertheless, there was before the court the entire transaction

resulting in the consummation of a flagrant fraud upon the plaintiff, in which transaction defendant Sidney Beach participated as an intermediary. There was also the undisputed fact that, only five days after receiving from Gurnsey a qualified assignment of the Flink notes and mortgages by way of pledge, defendant Sidney Beach, without consideration, transferred the same notes and mortgages to Niolon *by an absolute assignment* and was unable to remember whether or not he also assigned plaintiff's note for $489.31, for the payment of which the other notes and mortgages were held by him as security. These circumstances, coupled with the further fact that defendants Sidney Beach and Arthur Hesse were not strangers, but were on more or less intimate terms, occupying the same office, were sufficient to warrant the inference drawn by the trial court that defendant Sidney Beach was a party to a conspiracy which had for its object the fraudulent conversion complained of by plaintiff. Likewise, as regards the defendant Arvilla Hesse, there are the facts that she took title to the premises, subject to the recorded mortgages in favor of plaintiff, in her own name for the benefit of her husband and held the same for him at the time of the assignment and release of said mortgages by other agents of her husband. In addition, there is to be considered the part assumed by her in the various transactions subsequent to the release, by means of which her husband reaped the benefit of the conversion of the mortgages, the execution by her, together with her husband, of a new first encumbrance upon the property in order to obtain a loan of two thousand five hundred dollars, and the joining by her in a conveyance of the property when the same was sold free from plaintiff's mortgages. In coming to a conclusion upon the question of the implication in the conspiracy of the defendant Arvilla Hesse, all these circumstances were to be weighed by the trial court against the only evidence offered by this defendant in her own behalf, namely, her own denial that she knew anything about the transaction in which her husband was involved.

[10] The fact that defendants Sidney Beach and Arvilla Hesse acted solely as the trustees or agents of defendant Arthur Hesse does not constitute a valid defense, for a person is liable for his participation in a conspiracy, having for its object the commission of a wrongful act, even though he acts

only as an agent for another and is unacquainted with the details of the scheme. (*Brumley* v. *Speedway etc. Co.*, 138 Tenn. 534, [198 S. W. 775].) "A number of persons may conspire to do an unlawful act, and each becomes responsible for acts done in furtherance of the conspiracy. It would be no defense to any one of them to show that his participation was not necessary to the accomplishment of the ultimate purpose, and that it would have been consummated if he had not become a conspirator." (*Green* v. *Cochran,* 43 Iowa, 544, 550.) Plaintiff's omission to prove that said defendants Sidney Beach and Arvilla Hesse received pecuniary compensation as a result of the conversion is immaterial. [11] Those who aid in the commission of a wrongful act by another are liable for the resulting damages, although they expected no benefit from the wrongful act and in fact received none. (*Brumley* v. *Speedway etc. Co., supra; Breedlove* v. *Bundy,* 96 Ind. 319; *Felsenthal* v. *Thieben,* 23 Ill. App. 569.) It follows that the finding of the trial court to the effect that defendants Sidney Beach and Arvilla Hesse joined with defendant Arthur Hesse in a conspiracy whereby plaintiff was defrauded of her interest in the Flink notes and mortgages by a conversion thereof cannot be disturbed.

[12] With regard to the question of damages, the general rule is that where a note or other money securities have been converted, "their owner is, *prima facie,* entitled to recover their face value with interest." (4 Sutherland on Damages, 4th ed., sec. 1132.) [13] Where the converted debt was held by way of pledge, the amount due the pledgee on the principal debt must be deducted from the value of the debt converted (*Gay* v. *Moss,* 34 Cal. 125), and this was done by the trial court in the instant case. Appellants sought to further mitigate the damages by attempting to prove that the Flink notes were not worth their face value owing to the small value of the security and the insolvency of the maker.

[14] At the time the mortgages were executed, the mortgagor, Flink, owned seventy-six shares of water stock appurtenant to the mortgaged land. While there was a conflict of testimony as to the value of the land *with* the appurtenant water stock, there was uncontradicted testimony that the land *without* the water stock was practically worthless. Appellants contend that, in determining the value of the land as security for the notes in question, the water stock

cannot be taken into consideration, for the reason that, prior to the conversion of the mortgages, the water stock had been sold for a default in the payment of assessments thereon. Upon an examination of the testimony of defendant, Arthur Hesse, on this phase of the case, it appears that, after purchasing the premises and water stock in question, said defendant made default in the payment of assessments on the water stock. The stock was thereupon sold to meet the delinquent assessments and at the sale, which occurred June 30, 1916, defendant Arthur Hesse purchased said stock in the name of a third party acting in defendant's behalf. Defendant Arthur Hesse continued to hold the water stock in the name of this third party until after the release of the Flink mortgages. In view of the fact that defendant Arthur Hesse bought in the water stock with full knowledge of the circumstances and treated it as appurtenant to the land in question for other purposes, assigning the stock to Spitly at the time the trust deed to the property was executed as security for the two thousand five hundred dollars borrowed from Spitly and transferring the ownership in the stock to the purchaser of the property when the latter was finally sold by defendants, said defendant cannot be permitted to take advantage of his own default in order to decrease the value of plaintiff's securities. The water stock must be regarded as held for the benefit of the land at the time of the release of plaintiff's mortgages and the enhancement of the value of the land by the water stock was properly taken into consideration in determining the value of the converted securities. There was a conflict of testimony as to the value of the land *with* the water stock from which the trial court was warranted in finding that said value was sufficient to protect the Flink notes to the extent of their face value. Therefore, conceding that appellants succeeded in proving the insolvency of Flink, the maker of the notes, which is doubtful, nevertheless, the finding of the trial court that the notes were worth their face value is sustainable upon the theory that the property hypothecated by the mortgages was ample security for the full value of the notes.

The judgment is affirmed.

Wilbur, J., and Sloane, J., concurred.