[L. A. Nos. 6628, 6629, 6630, 6631. In Bank.—October 14, 1921.]

FRANK H. SMITH, Jr., et al., Respondents, v. R. B. BLODGET, et al., Appellants.

[1] CONTRACTS—AGREEMENT TO SELL LAND—PRINCIPAL AND AGENT—VENDOR AND VENDEE—INTENT.—Whether an agreement permitting a person "to sell" land on certain terms creates the relation of principal and agent or that of vendor and purchaser under a contract of sale depends upon the intention of the parties.

[2] ID.—AMBIGUITY—CONSTRUCTION BY PARTIES.—Where the intention of the parties to a contract is imperfectly expressed and the language employed by them is ambiguous and requires interpretation, it is permissible for the court to take into consideration the construction placed upon the instrument by the various persons concerned.

[3] ID.—ACTION FOR ACCOUNTING—SALE OF LAND UNDER OPTION—FAILURE TO SIGN OPTION.—In an action for an accounting to recover from defendants profits derived from a sale of land effected by them, without the knowledge and consent of plaintiffs, by means of an option given to the plaintiffs by the land owners, the failure of the trustee for the owners to sign the option is of no avail to the defendants, where the sale was consummated by them under the option and its terms were observed and complied with without question by all of the owners of the land.

[4] FRAUD—ACCOUNTING—JURISDICTION—EQUITY.—An action for an accounting lies within the jurisdiction of equity, among other instances, in cases of fraud as well as where there is a fiduciary relation between the parties and the facts are peculiarly within the knowledge of one; and having once taken jurisdiction, the court

will grant further relief demanded by the situation and necessary to complete justice.

[5] ID. — CONSPIRACY — LIABILITY OF SEVERAL PARTIES. — If through fraud and conspiracy other defendants assisted one of the defendants in violating his obligation to his principal by effecting a sale of land under an option given to plaintiffs, without plaintiffs' knowledge, and in retaining the proceeds, they, as well as the other defendant, are equally liable for all the consequences of the conspiracy, regardless of the extent of their participation or the share of the profits obtained by them.

[6] ID.—VIOLATION OF FIDUCIARY OBLIGATION—LIABILITY OF PARTIES ASSISTING—ACCOUNTING—JUDGMENT.—Where, after the violation of a fiduciary obligation, an accounting is had and an amount found to be due from the agent or trustee, judgment for the same amount may also be rendered against those proven to have fraudulently aided in the attempt of the fiduciary to obtain secret profits, although they themselves are not fiduciaries and received no share of the profits.

[7] ID.—CONFLICTING EVIDENCE—FINDINGS.—Where, although the trial court might have drawn the inference from the evidence before it that one of the defendants in such case did not act in conjunction with the other defendants in the matter, the conclusion reached was that said defendant was implicated in the conspiracy and the evidence was conflicting, and it was possible to draw conflicting inferences from that part of the evidence which was not itself conflicting, the conclusion cannot be disturbed on appeal.

APPEAL from a judgment of the Superior Court of Los Angeles County. Lewis R. Works, Judge. Affirmed.

The facts are stated in the opinion of the court.

Charles J. Kelly, D. A. Stuart, Blodget & Blodget, N. P. Moerdyke, John C. Stick, Rosecrans & Emme and E. F. Crawford for Appellants.

Fred N. Arnoldy for Respondents.

LENNON, J.—From the following facts the present litigation arose: Plaintiffs were the owners of certain land in Kern County, California, and desired to dispose of the same. In June, 1918, plaintiff Frank H. Smith, Sr., held a conversation with defendants R. B. Blodget and T. E. Commins, dealers in real estate, wherein defendant Blodget stated that the Associated Oil Company was interested in purchasing

a thousand contiguous acres in said county at $150 an acre and that plaintiffs' land was in the contemplated area. The necessity of securing united action on the part of the several owners of the land in the tract under consideration was discussed and plaintiff Smith, Sr., stated that his son, Frank H. Smith, Jr., could obtain a written option on 160 acres thereof which was owned by several persons jointly, to wit, C. H. Plummer, Emelie H. Smith, and certain others represented by Leslie S. Smith as trustee. The subsequent dealings concerning this particular parcel of land, called the "Plummer quarter section," gave rise to the present controversy. Pursuant to the above conversation, Smith, Jr., obtained a written instrument reading:

"Los Angeles, July 15th, 1918.

"This agreement witnesseth that we herewith give to Frank H. Smith, Jr., an option on our land S.W. ¼ Section 18, T 11N, R 22W, S.B.M., to handle & sell for us at a net price to us of $100.00 per acre. This option good for 60 days from date except that it may be revocable by a 10-days notice to him or to his last P. O. address.

"C. H. PLUMMER.
"EMELIE H. SMITH."

This authorization plaintiffs immediately entrusted to defendant Blodget, under an agreement that Blodget should act as their agent in finding a purchaser for the said land at $150 per acre, in which event Blodget was to receive a commission of two thousand dollars. Later, on August 10, 1918, plaintiffs agreed that Blodget's commission should be raised to two thousand five hundred dollars. In the meantime defendant Blodget had discussed the proposed sale with defendants Potter and Fickeissen, each of whom owned a quarter-section in the thousand acre tract. After learning of the contemplated deal, defendant Potter engaged Smith, Jr., in a conversation and discovered that he was about to leave town on a thirty-day vacation. Shortly thereafter defendant Potter succeeded in inducing the owners of the Plummer quarter-section to give plaintiffs a ten-days' notice of the cancellation of their option, to take effect on August 27th, and to give defendant Potter an option on the same property commencing on the day on which the plaintiffs' option expired. Smith, Sr., who was not on friendly terms

with the owners of the Plummer property, received the notice of cancellation on August 17th, during the absence of his son on a vacation at a point where it would be difficult to reach him by mail or telegraph.

About the same time that the notice of cancellation was delivered word was received that the Associated Oil Company was not interested in the purchase of the lands. Defendant Blodget then assured plaintiff Smith, Sr., that he would be able to dispose of the Plummer property to other purchasers prior to the expiration of the plaintiffs' option. In these representations he was joined by defendants Commins and Fickeissen, the latter having met Smith in the meantime. All three defendants mentioned one Patterson and Graham as prospective purchasers of the land. As a matter of fact, Patterson and Graham never had any intention of buying the property and were never considered by any of the defendants to be likely purchasers. Finally, on August 26th, the last day of the life of plaintiffs' option, a meeting was held at the office of defendant Commins, at which defendants Commins, Blodget, and Fickeissen met plaintiff Smith, Sr., by appointment. Defendants then stated that, as the option was about to expire, it would be necessary to furnish the sum of $250 to be paid to the grantors of the option in order to secure a thirty-day extension. The sum was advanced by the three defendants present, defendant Fickeissen making a statement to the effect that, as she was putting up half the money, she wanted half the proceeds. This money was paid to the grantors as a deposit on the exercise of the option and to apply on the payment of the purchase price, and the parties were thereupon given thirty days in which to complete the purchase. At the time this payment was made defendants Blodget, Commins, and Fickeissen represented to Smith, Sr., that they had found a purchaser by the name of Gross, an old friend of defendant Fickeissen, who resided in St. Louis, Missouri, and was taking a trip to California. Later, on September 3d, defendant Blodget induced Smith, Jr., who had then returned, to execute and deliver to said Blodget an assignment of the plaintiffs' option. This assignment was procured without consideration upon the representation that it constituted a mere agency authorization and that its sole purpose was to afford written evidence of Blodget's

authority to represent plaintiffs in selling the land to Gross. Defendants dated this assignment "August 9, 1918." Various representations were made by the said defendants to plaintiffs from time to time to the effect that Gross had been communicated with, had arrived in town, and that a sale to him was under way. However, on September 23d, Smith, Sr., discovered that the dealings with Gross were purely mythical. If any such person existed, defendants never communicated with him and he was never a prospective purchaser of the land in question. Upon this revelation, plaintiffs demanded the return of their option, but defendant Blodget had delivered it to defendant Fickeissen, who refused to surrender it. The evidence reveals that on September 18th, without plaintiffs' knowledge, Blodget had executed an option to purchase the property in question in favor of one Graham, and on the following day Graham executed a similar option to defendant Potter. A few days later, as a result and by means of the assignment to defendant Blodget of plaintiff's option and Blodget's option to Graham and the latter's option to Potter, a sale of the land was consummated by defendant Potter to the Chanslor Canfield Midway Oil Company for the price of $125 an acre, or over twenty thousand dollars. Previous to this sale, defendant Potter had effected sales to said Chanslor Canfield Company of at least three other quarter-sections in the vicinity of the Plummer property, including the quarter-sections belonging to himself, defendant Fickeissen, and a third person not involved in this controversy. The four defendants retained the proceeds of this sale of the Plummer land over and above the sum paid to the owners of the property (about sixteen thousand dollars) and incidental expenses amounting to a few hundred dollars. Plaintiffs instituted the present action for the sum thus retained and the trial court rendered a judgment against all the defendants jointly for the sum of $3,945.50. The four defendants have appealed separately, but since each appeals on the same grounds as the others, they have joined in the preparation of briefs, and the briefs filed by each are identical in content.

According to defendants' theory, the written instrument executed by C. H. Plummer and Emelie Smith in favor of Smith, Jr., is not an option to purchase, but merely an

authorization to sell the property as agent of the owners. If this be so, defendants affirm that the said instrument was inadmissible under the issues raised by the pleadings and that defendants' objection to its introduction in evidence should have been sustained, for the reason that in the present suit plaintiffs seek to recover the portion of the proceeds of the sale retained by defendants, not as agents and on behalf of the vendors of the land, but as owners of the said funds by virtue of rights arising under an option to purchase the land.

The fact that the agreement conferred the option to "handle & sell" the property for a certain sum, rather than to "purchase," does not, as defendants contend, necessitate the conclusion that the contract is merely one of agency. [1] Whether an agreement permitting a person "to sell" land on certain terms creates the relation of principal and agent or that of vendor and purchaser under a contract of sale depends upon the intention of the parties. (James on Law of Option Contracts, sec. 114.) Where there was a revocable authorization to a firm of real estate agents to *sell* land for ten thousand dollars net to the owners, with an agreement to pay "a commission of all over said sum of ten thousand dollars net, for which they may sell said property with our consent," it was held in this state that a sale by the firm under this agreement was effected in the capacity of vendor on its own account and not as agent of the owners of the land. (*Robinson* v. *Easton, Eldridge & Co.*, 93 Cal. 80, [27 Am. St. Rep. 167, 28 Pac. 796].) The determining factor in that case was the direct interest in and right to a part of the proceeds of the sale which was granted to the persons making the sale. The written instrument in the case at bar contains no express provision that plaintiffs shall retain that portion of the purchase price which exceeds the specified selling price. However, Smith, Jr., is given the right to sell "at a net price to us [the owners] of $100.00 per acre." Had the contract stated that Smith was authorized to sell the property *for not less* than one hundred dollars per acre net to the owners, it might be held that the provision was purely one of limitation and that the intent was fairly clear that the person bringing about the sale should have no interest in the proceeds as such. (*Allen* v. *Clopton* (Tex. Civ. App.), 135 S. W. 242.) But the broad

and unrestricted provision giving Smith the right to effect
a sale at a net price to the owners of one hundred dollars
per acre is susceptible of sundry interpretations. It may
mean that all net proceeds above the specified price belong
to him, the owners of the property agreeing to part with
all interest in the property, whatever the price may be,
provided they receive the sum of one hundred dollars per
acre free from all deductions, in which case Smith would
be in the position of a vendor selling on his own account; it
may mean that the owners of the property are entitled to
receive all of the net proceeds of the sale and that Smith
cannot look to them for any compensation for services un-
less he obtains for them a net price in excess of one hundred
dollars per acre, and in that case he would be a mere agent.
(*Ford* v. *Brown*, 120 Cal. 551, [52 Pac. 817] ; *Wolverton* v.
*Tuttle*, 51 Or. 501, [94 Pac. 961, 963].) The provisions of
the contract are not clear in this respect. [2] If this were
a case where the parties had plainly failed to make any
provision for compensation, a simple agreement to pay the
reasonable value for the services of an agent would be im-
plied (*Ford* v. *Brown, supra; Kennedy* v. *Merickel,* 8 Cal.
App. 378, 383, [97 Pac. 81]), but the case here presented
is one where the intention of the parties is imperfectly ex-
pressed and the language employed by them is ambiguous
and requires interpretation. It was, therefore, permissible
for the court to take into consideration the construction
placed upon the instrument by the various persons concerned.
(*Mittau* v. *Roddan,* 149 Cal. 2, 14, [6 L. R. A. (N. S.) 275,
84 Pac. 145].) Taking into consideration the dealings pre-
viously set forth, the various assignments of the option and
the manner in which the sale was conducted by all the
persons involved, the evidence must be held sufficient to
support the finding of the trial court "that the said in-
strument was acted upon and construed by the grantors
thereof and all the parties to this action as an option and
not as a mere agency authorization." It follows, therefore,
that the plaintiffs were entitled to that portion of the net
proceeds in excess of one hundred dollars per acre.

[3] On this appeal, defendants raise the objection for the
first time that the instrument in question was not signed
by Leslie Smith, trustee for some of the owners of the land
sold. This objection is of no avail to defendants in this

187 Cal.—16

case in view of the fact that a sale of the land was consummated by defendants under the said option and the terms of the option were observed and complied with without question by all of the owners of the land. Whether or not the written instrument was of value at the time it was first acquired by plaintiffs, it subsequently attained value and defendants cannot now attack it upon this ground after having assumed a fiduciary relation to plaintiffs in regard to it and realized financial profit by means of it.

The complaint sets forth two causes of action, one for money had and received and one for an accounting. The case was tried and decided under the latter count. Defendants claim that the action was in reality an equitable action for an accounting against defendant Blodget for failure to carry out his agency agreement and not one for damages for fraud and, therefore, that it was error for the trial court to render a judgment against all four defendants jointly for the amount found to be due from defendant Blodget.

[4] An action for an accounting lies within the jurisdiction of equity, among other instances, in cases of fraud as well as where there is a fiduciary relation between the parties and the facts are peculiarly within the knowledge of one. (2 Pomeroy's Equity Jurisprudence, sec. 910; 4 Pomeroy's Equity Jurisprudence, sec. 1421.) Having once taken jurisdiction, the court will grant further relief demanded by the situation and necessary to complete justice. [5] If through fraud and conspiracy other defendants assisted the defendant Blodget in violating his obligation to his principal by effecting a sale without plaintiff's knowledge and retaining the proceeds, they, as well as the agent Blodget, are equally liable for all the consequences of the conspiracy, regardless of the extent of their participation or the share of the profits obtained by them. It is the civil wrong, not the conspiracy, which constitutes the cause of action, and, therefore, the plaintiff may bring his suit along any lines which he deems most likely to afford him redress for the particular injury which he has sustained and, if successful in proving an injury of the nature claimed, may recover judgment in that action against all those who have united or co-operated in inflicting that injury. (*Revert* v. *Hesse,* 184 Cal. 295, [193 Pac. 943].) [6] And

where, after the violation of a fiduciary obligation, an accounting is had and an amount found to be due from the agent or trustee, judgment for the same amount may also be rendered against those proven to have fraudulently aided in the attempt of the fiduciary to obtain secret profits, although they themselves are not fiduciaries and receive no share of the profits. (*Lomita Land & Water Co.* v. *Robinson,* 154 Cal. 36, [18 L. R. A. (N. S.) 1106, 97 Pac. 10].)

It is not and, in view of the evidence, cannot be argued that defendants Blodget, Commins, and Fickeissen did not enter into and succeed in a conspiracy to effect a sale under plaintiffs' option without plaintiffs' knowledge and to retain the proceeds thereof. It is, however, contended that there is no evidence to sustain the finding that defendant Potter was involved in these dealings.

The trial court might have drawn the inference from the evidence before it that defendant Potter did not act in conjunction with the other defendants in this matter. [7] However, the conclusion reached was that said defendant was implicated in the conspiracy and, in view of the fact that the evidence was conflicting and that it was possible to draw conflicting inferences from that part of the evidence which was not itself conflicting, the conclusion cannot be disturbed on appeal. Defendant Potter's participation in the conspiracy was more veiled than that of the other defendants, and it is difficult to ascertain the exact point of time at which he came within the orbit of the conspiracy. However, "the law recognizes the intrinsic difficulty of proving a conspiracy. . . . The conspiracy may sometimes be inferred from the nature of the acts done, the relation of the parties, the interests of the alleged conspirators, and other circumstances." (*Revert* v. *Hesse, supra; Woodruff* v. *Hughes,* 2 Ga. App. 361, [58 S. E. 551].) When we consider that the climax in which the conspiracy culminated was an act consummated by defendant Potter, namely, the sale of the property to the Chanslor Canfield Oil Company; that during the negotiations herein set forth the said defendant was actively engaged in selling to the same company other land in the vicinity; that Patterson, Graham, and defendant Fickeissen, all of whom seem responsible for considerable, and effective, negotiating between the various parties, were close friends or former business associates of defendant

Potter, we believe the circumstances proven were such as to support the conclusion of the trial court that defendant Potter, if not the instigating and moving force behind the whole transaction, was at least implicated in the conspiracy. Defendants claim that it is absurd to hold that defendant Potter had any part in keeping alive plaintiffs' option by paying $250 on deposit on August 26th, and that it would have been to defendant Potter's interest to have permitted the option to expire and proceed under his own option, which he had obtained from the owners of the property. However, it may very well be that his own option was less favorable in its terms than plaintiffs' option and that defendant Potter's only object in procuring it was to enable the other defendants to more easily get control of plaintiffs' option by curtailing the life of the latter option. But, even assuming that defendants Blodget, Fickeissen, and Commins were acting adversely to defendant Potter in extending the plaintiffs' option on August 26th, by raising the sum of $250, nevertheless "it was not essential to liability on his part that he should have been a party to the scheme from its inception." (*Lomita Land & Water Co.* v. *Robinson, supra.*) The evidence is sufficient to warrant the inference that, subsequent to that time, Potter did wrongfully aid and abet in securing and withholding the profits from the plaintiffs and, the trial court having drawn that inference, he is equally liable with the other defendants.

Defendants contend that, on August 26th, at the time defendants advanced the $250 to be paid as a deposit on the option, Smith, Sr., entered into an agreement with the said defendants as to the division of profits and, therefore, plaintiffs cannot now claim all of the profits from the sale. However, any agreement which said plaintiff Smith, Sr., might have made at that time was not freely made, but was induced by the fraudulent representations and conduct of the defendants, and the agreement is thereby vitiated and not binding against the plaintiffs.

The judgment is affirmed.

Sloane, J., Shurtleff, J., and Lawlor, J., concurred.