[Crim. No. 1906.  First Appellate District, Division Two.—October 22, 1936.]

THE PEOPLE, Respondent, v. LOUIS GOLDABER et al., Appellants.

Emile Grossman, Leo A. Sullivan, A. G. Thompson, Raine Ewell and John F. O'Brien for Appellants.

U. S. Webb, Attorney-General, and Seibert L. Sefton, Deputy Attorney-General, for Respondent.

NOURSE, P. J.—The defendants Goldaber, Grossman and Katz were tried together on an information charging conspiracy to commit the crime of petty theft in violation of section 484 of the Penal Code. The jury found all three guilty, but Katz has not appealed. Separate appeals have been taken by each of the other two from the judgments and from each of the orders denying a new trial.

Grossman operated a jewelry store in the city of Oakland where he had tried to conduct auction sales but was unable to procure the necessary permit. He made an agreement with Goldaber and Boust whereby they undertook to sell the goods in Grossman's store without a permit. The three agreed to split the net profits of each day's sales, 37½ per cent to Grossman, the same to Goldaber, and 25 per cent to Boust. The defendant Katz was hired by Boust to help with the sales. Boust was not prosecuted, and he appeared as a witness for the state.

The parties looked over the goods in Grossman's store, and Goldaber told them it was not the right kind of merchandise for such a sale; so the parties met in San Francisco the next day where they purchased large quantities of cheap needles, styptic pencils, pens, collar buttons, perfume and wallets. The next day they opened the "sale" by inviting people to enter the store on the representation that articles were to be given away for advertising purposes. All were told that nothing was to be sold. Pencils, needles and other articles of little value were handed the customers and then Goldaber advanced his new method of selling goods, which the parties denominated an "action" sale instead of an auction sale. To illustrate, he would exhibit a ring which he represented to be worth $187, but which was not worth more than $5. He would tell the customers that he was not selling the ring, that he had no right to make a sale, and then would ask, "If this was sold, would you give ten dollars for it?" This was continued until he got what he thought to be the highest or final bid. When some customer announced he would give $35, Goldaber would reply, "Let's see if you have thirty-five dollars." Then, as one witness testified, "So I showed him my thirty-five dollars and that was the last I seen of my thirty-five dollars." Each transaction was the same—the customers were asked how much they

would give if the article were for sale; they answered, or bid, as in an ordinary auction. Then Goldaber required them to give evidence that they had the money and, when this was handed over, the customer was given the article bid for and compelled to accept it. In every instance testified to, the articles thus sold were worthless baubles or second-hand jewelry of practically no value. Throughout the transactions Boust and Katz acted as the ballyhoo or "tip" and "pitch" men, Goldaber was the "spieler" and Grossman was the cashier and bookkeeper.

Evidence of these transactions was given by Boust, a co-conspirator, and by numerous witnesses to the sales. All defendants were linked to the conspiracy by evidence of their participation in the overt acts, this evidence coming from eye-witnesses to the acts of each conspirator. ▮ For this reason we find no merit in appellants' complaint over the admission of the testimony of Boust. If his testimony stood alone there would be some ground for such complaint, but his entire testimony could have been eliminated and the case of the state against the conspirators would have been complete. Section 182 of the Penal Code declares that: "If two or more persons conspire. . . . 4. To cheat and defraud any person of any property . . . or to obtain money or property by false pretenses." Generally a criminal conspiracy is defined as a "confederation or combination of two or more persons" "to accomplish some criminal or unlawful purpose". (5 R. C. L., p. 1061.) But it is not the law of this state that the unlawful combination must be proved by direct evidence other than that of one of the conspirators. This element may be inferred from the facts and circumstances. ▮ Where, as here, the direct evidence of the actual workings of the conspirators supports a logical inference that they were working under an "unlawful combination" to accomplish a criminal act, the *fact* of conspiracy is established (*People* v. *Yeager*, 194 Cal. 452, 473 [229 Pac. 40]; 8 Cal. Jur., p. 178), and the testimony of the coconspirator is thereby corroborated for all the purposes required by section 1111 of the Penal Code.

▮ The appellant Grossman raises the additional point that the district attorney was guilty of misconduct in referring to their transactions as "tricky" and "trickery". We are unable to follow appellant in this argument. No

one could read the evidence of the conduct of these parties without concluding that it was conceived with the purpose of tricking the public and the public authorities as well. The evidence of this stood out so clearly that it cannot be assumed that any juror needed the suggestion of the district attorney to see the trickery of appellants' scheme of selling their goods under the false pretense that they were only making gifts for advertising purposes. But, if such was the effect of the questions, the state had the right to show that the conspirators knew the unlawfulness of the transactions in which they agreed to engage.

The judgments and the orders denying new trials are all affirmed.

Sturtevant, J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 6, 1936, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 19, 1936.