[Crim. No. 459.    Fourth Appellate District.—December 4, 1940.]

THE PEOPLE, Respondent, v. JOHN NATHAN LITTLE, Appellant.

S. P. Williams for Appellant.

Earl Warren, Attorney-General, Eugene M. Elson, Deputy Attorney-General, Elmer W. Heald, District Attorney, and Ralph I. French, Deputy District Attorney, for Respondent.

MARKS, J.—Defendants Lillian O. Richards and John Nathan Little were jointly indicted by the grand jury of Imperial County and charged in various counts: With conspiracy to unlawfully appropriate to their own use $28,500 alleged to have been the property of the city of El Centro; with eighteen separate embezzlements of the public funds of the city of El Centro; with nine separate crimes of keeping false accounts and making false entries in monthly accounts of the Water Department of the city of El Centro.

Near the close of the trial Mrs. Richards withdrew her plea of not guilty to the conspiracy count, to one of the embezzlement counts and to one of the counts charging the keeping of false accounts and making false entries in the accounts of the Water Department. She entered her pleas of guilty to

those three charges. Prosecution on the other charges against her was discontinued. She has taken no appeal.

It was agreed between counsel and the trial court that the charges against defendant Little be considered as three: (1) the conspiracy; (2) the embezzlements; (3) keeping false accounts and falsifying accounts. The jury found him guilty of the three crimes. He has appealed from the judgment and from the order denying his motion for new trial.

We will hereafter refer to John Nathan Little as the defendant. He presents three grounds for a reversal of the judgment: (1) That at all times material here Mrs. Richards was his wife and therefore legally unable to enter into a conspiracy with him; (2) that the verdicts and judgment are not supported by any evidence against him; (3) misconduct of the district attorney.

Mrs. Richards and defendant went through a marriage ceremony on November 19, 1938, in Tuscon, Arizona, and assumed the relation of and were known as husband and wife until early in January, 1940. At the time of their purported marriage they both had spouses living from whom they had not been divorced. Mrs. Richards had her marriage with defendant annulled for that reason on February 17, 1940.

On August 11, 1938, John Nathan Little obtained an interlocutory decree of divorce from Emma Lee Little in the Superior Court of Imperial County. A final decree of divorce was rendered on August 30, 1939, and was entered on the following day.

In the same court Lillian Sherman was given an interlocutory decree of divorce from George H. Sherman on September 15, 1938. A final decree of divorce was rendered and entered on October 11, 1939.

██ It is urged that there is no evidence showing that the John Nathan Little named in the decree of annulment and in the interlocutory and final decrees of divorce is the same person who is defendant here. There is no merit in this contention because where there is an identity of name the law presumes an identity of person. (Subd. 25, sec. 1963, Code Civ. Proc.) It follows that as there was no evidence offered to the contrary we must presume that the Lillian O. Richards named in the annulment proceedings is the same person as the Lillian O. Richards named as a defendant here and that the John N. Little named as defendant in the annulment proceed-

800

ings and the John Nathan Little named as plaintiff in the divorce case against Emma Lee Little is the John Nathan Little who is defendant here.

Defendant urges there is no evidence that the Lillian Sherman who obtained a divorce from George H. Sherman was the same person as Lillian O. Richards. This argument fails to take into consideration an important part of the record. The district attorney attempted to call Mrs. Richards as a witness against defendant. Objection was made to her testifying on the ground that she was then the wife of defendant; that defendant and Lillian Sherman (Mrs. Richards) had been married in Las Vegas, Nevada, on March 9, 1940. It being thus admitted that Lillian Sherman and Mrs. Richards were names of the same person and as there was no evidence to the contrary we must again presume "Identity of person from identity of name".

The attorney-general concedes that a husband and wife cannot conspire together to commit a crime. (See, *People* v. *Miller*, 82 Cal. 107 [22 Pac. 934]; *People* v. *MacMullen*, 134 Cal. App. 81 [24 Pac. (2d) 794].) To give life to this rule the alleged conspirators must actually be husband and wife which implies a valid marriage. Because a man and woman, not legally qualified to be married to each other, go through a void marriage ceremony, cannot make them husband and wife.

Subject to certain exceptions not appearing here, section 61 of the Civil Code declares void a purported marriage between a man and woman when either or both of them have living an undivorced wife or husband. In *People* v. *Glab*, 13 Cal. App. (2d) 528 [57 Pac. (2d) 588], it was said:

"An enlightening discussion of void and illegal marriages and the distinction between void and voidable unions is found in *Estate of Gregorson*, 160 Cal. 21 [116 Pac. 60, Ann. Cas. 1912D, 1124, L. R. A. 1916C, 697], wherein Mr. Justice Sloss lays down the rule that 'a marriage prohibited as incestuous or illegal and declared to be "void" or "void from the beginning" is a legal nullity and its [in]validity may be asserted or shown in an proceeding where the fact of such marriage is material'. The same case is also authority for the proposition that although section 80 of the Civil Code provides a means for judicial determination of void marriages, that does not undertake to establish an exclusive method of ques-

tioning the validity of the purported marriage. Says Justice Sloss: 'The judgment merely declares an existing fact, viz., that the marriage is void, and that fact may be shown even though it may not have been so adjudicated.' ''

As both Mrs. Richards and defendant had spouses living and undivorced on November 19, 1938, at the time of their attempted marriage to each other, that ceremony was illegal and void and there was no marriage at all. They did not become husband and wife until they went through a second ceremony on March 9, 1940, after their disabilities had been removed. It follows that between July 1, 1938, and January 1, 1940, they were not husband and wife and could conspire together to commit the crimes here charged.

In considering the sufficiency of the evidence to support the verdicts and judgment it will be necessary to summarize the evidence as briefly as is possible in order to give a picture of the crimes admittedly committed by Mrs. Richards and defendant's relation to them and to her.

The city of El Centro owned and operated its water system. Mrs. Richards was employed as bookkeeper and collector for this enterprise. She commenced her duties some time in 1935 and ended her services about January 8, 1940. Her salary was $125 per month during the early part of her employment. It was increased to $139 per month, probably after July 1, 1939.

A meter reader, employed by the city, read the meters. After the twentieth of each month he turned his records in to her showing the amount of water used by each consumer during the month preceding each reading. Mrs. Richards computed the cost of the water used by each consumer and entered the results on her records. She then billed each customer for the amount owing to the city. These bills were made out on post cards and were mailed to the consumers. A stub was attached to each card showing the amount of the bill. When the bill was paid the card was receipted and the stub detached and kept as an office record. The total daily collections and the total of the amounts appearing on the stubs were supposed to balance. Deposits of the collections in a bank were supposed to have been made when sufficient money had been received by her. At the end of each month Mrs. Richards made a verified report of her collections to the city clerk. She had charge of these operations and attended

to all of them personally except when she was absent from the office when an assistant from the office of the city clerk relieved her. On her return she would balance the cash collected by the assistant with the amounts shown on the stubs. The accounts of the assistants balanced on all occasions except four. On these occasions the variances were adjusted by the assistant.

The proved shortages in Mrs. Richards accounts commenced in July, 1938, and continued monthly until January 1, 1940. Mrs. Richards kept account of the money which she abstracted. She removed and kept stubs showing total receipts equalling the amount of money taken. She deposited the balance of the money in the bank. After July 1, 1938, her monthly reports of money collected showed only the amounts of the deposits made by her and were false statements as they did not show, as collected, the money she embezzled.

Her monthly shortages in 1938 were in the following amounts: July—$1369.93; August—$1382.99; September—$1567.07; October—$1598.94; November—$1589.96; and December—$1607.26. In 1939 they were as follows: January—$1766.97; February—$642.38; March—$1242.83; April—$2,246.53; May—$857.20; June—$1390.39; July—$1906.21; August—$2,296.16; September—$2,216.74; October—$1854.-15; November—$1345.90; and December—$1979.49. Her total defalcations were $28,861.10 in eighteen months.

About July, 1937, Mrs. Richards purchased 255 acres of land near the town of Dexter, Oregon. A considerable balance was owing on the purchase price. On September 1, 1938, this property was conveyed to Lillian O. Little and John N. Little. Probably in August, 1938, defendant went to Oregon and started extensive improvements on this property. He rebuilt the dwelling, built a capacious chicken house, bought and attempted to raise 2,500 small chicks, bought an electric brooder, a harvester, trucks, tractors and various farming implements.

Mrs. Richards and defendant opened a joint account in the First National Bank at Eugene, Oregon, on September 20, 1938. The account was closed on January 17, 1940. There was $6,284.30 deposited in this joint account of which $1500 was probably borrowed by them from the bank.

Mrs. Richards sent more than $7,400 to Oregon between October 1, 1938, and November 1, 1939. This money was transmitted by telegraph and by bank drafts. By far the

greater portion of this amount was sent to defendant and the telegraph money orders and bank drafts were endorsed and cashed by him. Smaller amounts were sent direct to creditors to pay bills contracted by defendant in connection with improvements made on the farm and purchases made by him which we have already mentioned. The telegrams transmitting the money were sent and the bank drafts were purchased in various cities in Imperial County and in San Diego and Riverside. Mrs. Richards invariably used cash in these transactions.

One witness testified that in July, 1938, he saw defendant and Mrs. Richards with currency lying on a bed in front of them; that defendant said to her, "You can get more, and there is more where this came from . . . "; that during the same month defendant said to this witness that he was going to the police station and "bust" Mrs. Richards "wide open".

Another witness testified that in November, 1938, defendant exhibited a roll of bills "about as big as my arm" and said to her, in effect, that many people in El Centro would like to know where John Little got his money but that it was none of their business. This was corroborated by another witness.

Other witnesses who had worked on the farm in Oregon testified that in 1939 defendant gave one of them an envelope containing some papers, remarking that "there were some slips in there that Lillian (Mrs. Richards) would give her interest in heaven to have, but they might send her to hell"; that the envelope and its contents were subsequently destroyed. Neither of these witnesses could read so the contents of the envelope remained undisclosed.

Another witness testified that on or about October 13, 1939, defendant gave him for temporary safekeeping an envelope which defendant said contained over $700 in currency; that the envelope was stamped and addressed and had been "used"; that on another occasion defendant offered him a $100 bill in payment of a small purchase.

It is also in evidence that on one occasion defendant came into the Water Department office in El Centro; that he was angry and said to Mrs. Richards, "Get that stuff ready, we are leaving here and you are going with me".

Another witness testified that in Eugene, Oregon, defendant borrowed a dollar from him saying he wanted to "wire the old lady for some money"; that he said to defendant,

"It is pretty easy getting money, a pretty easy way of getting money, will she send it?"; that defendant replied, "You're damned right she will, I know too much".

There is also evidence that defendant made statements to witnesses concerning Mrs. Richards and her employment that were proven false.

Defendant urges that this evidence is insufficient to establish conspiracy as there is no evidence of any agreement between the parties that Mrs. Richards should abstract money from her water collections.

It is true that there is no direct evidence of an express agreement between the parties to steal the money. Such direct evidence is rarely obtainable in conspiracy cases as knowledge of an express agreement to commit a crime is usually locked within the minds of the conspirators. However, a conspiracy may be established by circumstantial evidence or by reasonable inferences drawn from the evidence. (*People* v. *Paz,* 1 Cal. App. (2d) 262 [36 Pac. (2d) 657]; *People* v. *Goldaber,* 17 Cal. App. (2d) 195 [61 Pac. (2d) 975].) In *Revert* v. *Hesse,* 184 Cal. 295 [193 Pac. 943], the Supreme Court approved the following: " 'The law recognizes the intrinsic difficulty of proving a conspiracy. . . . The conspiracy may sometimes be inferred from the nature of the acts done, the relation of the parties, the interests of the alleged conspirators, and other circumstances.' (*Woodruff* v. *Hughes,* 2 Ga. App. 361 [58 S. E. 551]; *Jernigan* v. *Wainer,* 12 Tex. 189.)" (See, also, *People* v. *Beck,* 60 Cal. App. 417 [213 Pac. 61]; *People* v. *King,* 30 Cal. App. (2d) 185 [85 Pac. (2d) 928].)

We believe the evidence in this case amply sustains the implied finding of the jury that defendant and Mrs. Richards conspired together to embezzle money from the city of El Centro. Mrs. Richards' salary was never more than $139 per month. Over a period of thirteen months she sent defendant, personally, and to creditors to pay bills contracted by him, over $570 per month. Besides, it was proven that defendant, on at least three occasions, had considerable sums of currency in his possession. On at least two occasions his statements indicated that this money came from Mrs. Richards. Undenied statements attributed to him indicated his knowledge of the illegal source of her income. Where, as here, a man and a woman, though not married, are living together in the relation of husband and wife, where they em-

bark on a joint undertaking to improve their common property for their mutual benefit, where they expend large sums of money for this purpose and for their common benefit, where the woman has access to public funds in considerable amounts and where she furnishes the man with considerable sums of money to be used for their common benefit, which sums are greatly in excess of her income, where the embezzlement of public funds by the woman is proved beyond the possibility of doubt, and where the man makes statements indicating his knowledge that the woman was embezzling the money furnished to him, the implied finding of the jury that they agreed and conspired together to embezzle the money cannot be disturbed on appeal.

This same evidence summarized by us in support of the finding of the conspiracy also supports the finding of embezzlement.

■ Defendant contends that he cannot be guilty of embezzlement of public funds of the city of El Centro because he was not the ''person charged with the receipt, safe-keeping, transfer or disbursement of public moneys''. (Sec. 424, Pen. Code.)

Section 31 of the Penal Code provides in part as follows: ''All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid or abet in its commission, or, not being present, have advised and encouraged its commission, . . . are principals in any crime so committed.'' What we have already said indicates our conclusion that defendant was properly found guilty of the embezzlements as the inference is strong that he aided and abetted and advised and encouraged Mrs. Richards in her criminal acts. If authority be needed to support the conclusion that a person who is not an official may be guilty, as a principal, in the crime of misuse of public funds, it may be found in the case of *People* v. *West*, 3 Cal. App. (2d) 568 [40 Pac. (2d) 278].

■ Defendant maintains there is no evidence sustaining the verdict and judgment against him of falsifying public accounts. This charge relates to the method used to conceal the embezzlements and not to the embezzlements themselves. Knowledge of the defalcations would not import knowledge of the plan used to conceal them.

The evidence demonstrates that Mrs. Richards falsified her monthly reports of collections. This is the crime of which defendant stands convicted as a principal. To support that conviction there should be evidence from which a reasonable inference might be drawn that defendant knew that those false statements were being made by Mrs. Richards and that he aided and abetted or advised and encouraged her in making them. The only evidence in the entire record indicating that defendant knew that Mrs. Richards was filing monthly reports of her collections and that those reports were false is contained in her testimony before the grand jury, a portion of which was read to the jury. However, this evidence was admitted against Mrs. Richards alone and the jury was instructed not to consider it as evidence against defendant. After Mrs. Richards entered her pleas of guilty this evidence was stricken from the record in its entirety. After this evidence was stricken there was no evidence remaining indicating that defendant had even a suspicion that Mrs. Richards was filing any statements of her collections or that any of her records or accounts were falsified. It follows that the judgment pronounced on defendant for falsifying public accounts must be reversed.

Defendant complains of remarks of the district attorney during his argument to the jury. We have examined the record and can find nothing sufficiently prejudicial to cause a reversal of the judgment.

The portions of the judgment pronounced on defendant under count one of the indictment and under counts two to nineteen, inclusive, of the indictment, and also the portion of the order denying the motion for new trial under those portions of the judgment are affirmed. The portion of the judgment pronounced on defendant under counts twenty to twenty-eight, inclusive, of the indictment, and the portion of the order denying the motion for new trial under those counts are reversed.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 17, 1940, and the following opinion then rendered thereon:

THE COURT.—Respondent has petitioned for a rehearing and urges that the part of our judgment which reverses the portion of the judgment of conviction of the crime of falsifying public accounts should be reconsidered.

It is urged that as Little was held guilty of the crime of conspiracy to embezzle, and also of the crime of embezzlement, he should also be guilty of the crime of falsifying public accounts as those criminal acts were committed in the "furtherance of the common object of the conspiracy" to embezzle and were "the ordinary and probable effect of the common design". (*People* v. *Sampsell*, 104 Cal. App. 431 [286 Pac. 434]; citing *People* v. *Lorraine*, 90 Cal. App. 317 [265 Pac. 893]; *People* v. *Kauffman*, 152 Cal. 331 [92 Pac. 861]; *People* v. *Holmes*, 118 Cal. 444 [50 Pac. 675]; *People* v. *Lawrence*, 143 Cal. 148 [76 Pac. 893, 68 L. R. A. 193].)

We are not unmindful of this rule which is generally applied in conspiracy cases. It is well settled that "if in the consummation of an express and unlawful purpose of the conspiracy, one of the conspirators goes outside of such express purpose and kills, the other conspirators cannot escape responsibility where, as here, such killing is not an unreasonable result to be expected from the acts . . . which were contemplated." (*People* v. *Cowan*, 38 Cal. App. (2d) 231 [101 Pac. (2d) 125, 135].)

In this case, and others like it, certain of the conspirators went armed to the place of the crime to commit the offense that was the purpose of the conspiracy and the killing then occurred. The fact that they went armed to commit one crime, and the further fact that one of them killed during the commission of that offense, have been considered sufficient to bring the killing within the orbit of the conspiracy and make each conspirator liable to punishment therefor.

There are reasons why this rule is inapplicable in the instant case. First, the conspiracy involved here had as its purpose the embezzlement of public funds. The embezzlements occurred during each calendar month over the period charged. Each part of the crime was complete when the money was misappropriated during a particular month. At the end of each month one conspirator filed a false statement of accounts. This was an act to conceal a former crime and was not a necessary part of that crime. Second, the filing of false statements by Mrs. Richards was not necessarily an

incident of, nor was it a result to be expected and to follow from the crime of embezzlement. There are many cases of embezzlement reported in the books where there were no falsifications of public accounts by the embezzlers. Here, the crime of embezzlement was not committed through the falsification of public records nor at the time of filing the false reports. After each series of embezzlements had been completed Mrs. Richards filed a false statement of her collections. In each case relied upon by respondent the independent crime was committed during the progress of the overt act which was the purpose of the conspiracy. Here, it was not so committed but occurred after each overt act had been completed. In our opinion there should be some evidence in the record from which the reasonable inference could be drawn that Little either knew or should have known that Mrs. Richards was filing false accounts. As such evidence is entirely lacking we cannot affirm that portion of the judgment.

The petition for rehearing is denied.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 3, 1941.