[Crim. No. 6068.   Second Dist., Div. One.   Sept. 21, 1959.]

THE PEOPLE, Respondent, v. ARTHUR LAWRENCE CUMMINGS, Appellant.

Max Solomon and John J. Bradley for Appellant.

Stanley Mosk, Attorney General, and N. B. Peek, Deputy Attorney General, for Respondent.

NOURSE, J. pro tem.*—By information filed by the district attorney of the county of Los Angeles, appellant Cummings and one Jordan were charged (count I) with conspiracy to commit abortion (one Leonard Maxwell Arons, James Utley, Ed Nasif, Geneva Owens, Evelyn Kooistra, John D. Crum and Mary Campbell were named as coconspirators but were not charged); count II, an abortion on one Grace Flad on the 24th of February, 1956; count III, an abortion on one Ruth Campbell on the 6th of April, 1956; count IV, an abortion on one Harriet Robinson on the 4th of May, 1956; count V, an abortion on one Valerie Serdonov; count VIII, an abortion on one Younghee Bai on the 5th of June, 1956; count IX, an abortion on one Joan Crowhurst on the 13th of April, 1956, and count X, an abortion on one Avis Rich on the 23d day of May, 1956. By counts VI and VII Jordan alone was charged with an abortion upon Valerie Serdonov.[1]

A jury was waived and the case was tried to the court. The court found the appellant Cummings guilty on counts I, II, III, IV, V, VIII, IX and X and found defendant Jordan guilty on counts I, V, VI, VII, VIII and X.[2]

*Assigned by Chairman of Judicial Council.

[1] At the preliminary hearing coconspirator Crum pleaded guilty to the same crimes as are charged by counts I and II of the information; Campbell pleaded guilty to counts I and VIII and Kooistra pleaded guilty without designating any specific counts.

[2] Jordan appealed but at his request the appeal has been dismissed.

Appellant attacks the sufficiency of the evidence to uphold any of the counts upon which he had been adjudged guilty.

Count I. In his attack upon the sufficiency of the evidence to uphold the finding of guilty on count I he does not contend that a conspiracy did not exist but asserts that there is no evidence that he was one of the conspirators.

Viewed in the light most favorable to the respondent, there was substantial evidence to establish the following facts: From February 15, 1956, until the early part of May in that year, Kooistra under the assumed name of Donna Grayson and her sister, Mary Campbell, who also assumed the name of Grayson, occupied an apartment in the city of Long Beach. During this same time Kooistra and appellant lived together in another apartment which had been rented by Kooistra. During the aforementioned period, abortions were performed upon one Flad, Ruth Campbell, Crowhurst and Robinson in the Long Beach apartment. Coconspirators Kooistra, Campbell, Crum and Jordan were each identified as participating in one or more of these four abortions and each of the abortees testified to the performance of the operation. The testimony of the abortees showed that in the performance of each abortion the same procedures were followed as to the preparation of the abortee for the operation, placing her on the table, the injection of the anesthetic, the collection of the fee and the manner in which the contacts between the abortee and the conspirators were made, and in most instances, in the manner of conveying the abortee to and from the Long Beach apartment.

On May 20, 1956, appellant[3] under the assumed name of Dr. Walter A. Daniels, entered into a sublease on premises situate at 9753 East Flower Street in Bellflower, California. These premises were designed for use as a medical office and were under lease to another physician. A card was placed upon the door stating that Dr. Daniels was to be seen by appointment only. Negotiations for this sublease were carried on by Kooistra under the assumed name of Mrs. Daniels. In carrying on these negotiations she said she wanted to rent a doctor's office that was equipped and ready to move into. Upon appellant's taking possession under the lease, the former occupant, a Dr. Krohn, was permitted to leave a sign on the premises stating he had moved to another address, the address being given.

---

[3]The evidence showed that the appellant had been a licensed physician and surgeon but had been convicted of attempted abortion and his license revoked.

Thereafter several couples came to Dr. Krohn's new address inquiring for Dr. Daniels and stating they desired an abortion. Mrs. Krohn called Dr. Daniels' office on the telephone with respect to these visits and the woman who answered the phone stated "Just send them back." Thereafter Dr. Krohn called the police.

Shortly after the new premises were leased by appellant, one Avis Rich (count X) was aborted at the premises rented by appellant. She identified Kooistra (Mrs. Daniels) as the person who injected the anesthetic. All of the procedures in this abortion were practically identical with those in the abortions which had been performed in the Long Beach apartment. She also identified Mary Campbell as being present on the premises, and testified that Campbell assisted her to dress and to the automobile in which her husband was awaiting her.

In the latter part of May or the first part of June, one Man Lip Choy called on the appellant at his apartment. He testified that he told appellant that he had a friend "is a very past due case, so I like to have similar thing miscarriage done for my girlfriend, Younghee Bai." Appellant replied that he was not supposed to do that but asked him how long the condition had existed and that he told appellant it was almost three months. Appellant said it would be dangerous if it was three months but for him (Choy) to go home and asked Choy for his phone number. Appellant told Choy that the cost would be $350. That shortly after he arrived home he was called on the phone by a woman who, when he answered, asked if he was Mr. Choy and inquired as to the length of Bai's pregnancy and who told him to go to the Flower Street address on the following day and to be there at 2:30 in the afternoon. He further testified that on the following day he took Bai to the address given by Dr. Daniels' office, 9753 East Flower Street in Bellflower, but misunderstood Dr. Krohn's card and went to Dr. Krohn's office, and finding his mistake returned to the Flower Street address and was finally admitted. That in the waiting room he saw Miss Campbell. Bai was taken into another room and in about 30 minutes he saw her in the dressing room and he had to help her dress. Campbell asked for money and he paid her $325 and Campbell gave him some pills with instructions to give them to Bai which he did the following day. He further testified that at the time of entering the operation room Bai was in good condition; that he had been intimate with Bai from December of 1955 to about the middle of March, 1956; that after the last intimacy she told

him she had missed her menstrual period for March and later that her menstrual periods resumed after her visit to Daniels' office.[4]

The appellant in his testimony admitted having a conversation with Choy at his (appellant's) residence. He stated that Choy told him that he had a girl who was an arrested case of t.b. and who was pregnant; that he told Choy he couldn't help him in the matter because "I was on an accusation at the present time, and whether or not it was illegal—or an x-ray that she needed, there was nothing I could do to help him," and that he told Choy that if he wanted to leave his phone number "I would see if I could get somebody to examine her for him." That he, Cummings, called Dr. Hutchison but was unable to contact him and thereupon related what had happened to Kooistra and asked her to get hold of Dr. Hutchison; that he never heard of the matter further.

Valerie Serdonov testified that in May she found she was pregnant and determined to have an abortion. After making inquiries she received a phone number which she called and talked to an unidentified woman and asked for Dr. Crum. That she was told he was not in but if she would leave her number he would call. Later she received a call from a man who identified himself as Crum and later received three more calls from him. She informed him of her condition and her desire "to get it done and over with." Finally an appointment was made for him to come to her home, and in the latter part of May two men visited her. These men she identified as Utley and the coconspirator Arons. Utley advised her that he had hurt his arm and therefore Arons would perform the abortion. They advised her that they were going to pack her and did pack her and she paid Utley $300. The packing did not achieve the desired results.[5]

Upon appellant's arrest at his residence there was found there a bundle of telephone bills and these reflected calls from October, 1955, to August, 1956, among them being a large number of calls to Dr. Walter A. Daniels, one to Rita Green who was identified in the record as the wife of the coconspirator,

[4] All the testimony of Choy relative to Miss Bai's statements to him relative to her pregnancy and the resumption of her menses was received over the objections of the defendant that they were hearsay.

[5] The foregoing evidence as to the attempt to abort Mrs. Serdonov was the basis of count V of the indictment. Two other attempts were made to abort her and these attempts are the basis of counts VI and VII of the indictment by which appellant's codefendant Jordan, alone was charged.

James Utley, nine calls to the residence of codefendant Jordan and one call to Mrs. Serdonov. There was also found a book bearing the title "Personal Directory, Telephone Numbers" which contained among other names that of the coconspirators Dr. Arons and Utley and his wife, they being listed under the name of "Green." There was also found a date book the cover of which bore appellant's name and which contained the names and telephone numbers of the coconspirators Crum and Utley, he being listed under the name of "Green."

The evidence further showed that appellant was well acquainted with Utley and was in contact with him on many occasions and that Utley and his wife had both been his patients.

That the evidence we have summarized was sufficient to uphold the finding of the court that a conspiracy to commit abortions existed and that at least from on and after May 20, 1956, appellant was one of the conspirators, is clear.

█ That a conspiracy and participation therein may be proven by circumstantial evidence and in most cases must be so proven, is firmly established by the law of this state. (*Revert* v. *Hesse,* 184 Cal. 295 [193 P. 943] ; *People* v. *Steccone,* 36 Cal.2d 234 at 237-238 [223 P.2d 17] ; *People* v. *Little,* 41 Cal.App.2d 797 at 804 [107 P.2d 634, 108 P.2d 63] ; *People* v. *Woodard,* 145 Cal.App.2d 529 at 536 [302 P.2d 834].)

█ The inference that appellant was a participant in the conspiracy from and after May 20, 1956, was one reasonably drawn from the fact that appellant leased the Bellflower property under an assumed name and placed a card on the door holding himself out as a physician under that name; that thereafter abortions were performed on Avis Rich at that place; that Miss Bai was taken there for the purpose of an abortion after inquiries by Choy of appellant and appellant's agreement that he would attempt to secure a physician to examine Bai; that the operation on Mrs. Rich was performed in practically the identical manner as the operations performed in the Long Beach apartment and that Campbell and Kooistra were present at that operation; that Mrs. Serdonov's name and telephone number were found in appellant's home in a book bearing appellant's name. The judgment of conviction as to count I was therefore amply sustained by the evidence.

We are also of the opinion that the evidence was sufficient to uphold the implied findings of the trial court that appellant

was one of the conspirators from the inception of the conspiracy is sustained by the evidence. ▮ While mere association with conspirators is, of course, not sufficient to uphold a finding that a person is a member of a conspiracy, yet here the close and continuous association of appellant with Utley, Kooistra and Campbell, who were clearly proven to have been parties to all of the Long Beach abortions, taken together with the fact that immediately upon the cessation of the operations in the Long Beach apartment he leased the Bellflower premises and that the same type of operations occurred there, upholds an inference that he was a party to the unlawful agreement (conspiracy) from its inception.

The evidence being sufficient to support a finding that appellant was a member of the conspiracy from its inception, in itself sustains the judgment of the trial court finding him guilty of the substantive offenses charged in counts II, III, IV, V, VIII, IX and X, if the evidence was sufficient to uphold the finding that abortions were committed as charged in those counts pursuant to the conspiracy. (*People* v. *Harper*, 25 Cal.2d 862, 866 [156 P.2d 249].)

▮ Appellant asserts that there was no corroboration of the testimony of the abortees and that therefore the crimes charged were not proven. As to counts II, III, IV, IX and X, this contention is clearly without merit. The abortions charged in counts II, III, IV and IX were all performed in the apartment occupied by the conspirators Kooistra and Campbell. Each was performed in practically the identical manner and each made contact with the conspirators in a similar manner and in each instance, with the exception of Flad, the abortee identified at least one of the conspirators as a participant in the abortion. As to count X, (Avis Rich) this operation was performed in the identical manner that the operations had been performed in the Long Beach apartment rented by Campbell and Kooistra under assumed names. The facts we have related, together with the fact that appellant was the lessee of the premises where the abortion on Rich was performed, in our opinion constitute sufficient corroboration of the testimony of the abortees under the rule laid down by the Supreme Court in *People* v. *Weiss*, 50 Cal.2d 535 at 568 [327 P.2d 527]; *People* v. *Davis*, 43 Cal.2d 661 at 675 [276 P.2d 801]; *People* v. *Gallardo*, 41 Cal.2d 57 at 63-64 [257 P.2d 29].

▮ As to count V, the abortion of Serdonov, her testimony as to the abortion was clearly corroborated by the testimony

of Jordan that Utley had told him that a girl, Serdonov, with whom "he had been messing around" had gotten into trouble and that he, Jordan, had examined Serdonov at Utley's request and found that some operation had been performed on her and that the cervix was badly lacerated and that the fetus in the womb was cut up like hamburger. He further testified, without objection from appellant's counsel, that Serdonov had told him that Utley posed under the name of Dr. Crum and had attempted to abort her. This testimony clearly corroborated Serdonov's testimony and it was for the court to determine under all the facts whether this abortion was performed pursuant to the conspiracy that was established and the court's implied finding that this abortion was done pursuant to the conspiracy is upheld by the evidence that Utley was a party to the conspiracy; the close acquaintance between appellant and Utley, and the fact that a telephone call had been made to Serdonov from appellant's apartment.

We are convinced, however, that the judgment holding appellant guilty under count VIII cannot be sustained. There was no evidence whatsoever offered as to what occurred after Bai left the presence of Choy when he took her to the office of Dr. Daniels. While we might speculate that an abortion was performed upon her during the 30 minutes that she was not in Choy's presence, there was no evidence whatsoever that one was performed.

The People rely upon *People* v. *Brown,* 49 Cal.2d 577 and the cases cited therein at page 588 [320 P.2d 5]. Those cases are not in point for while under the rule laid down by them the fact of pregnancy (proof of which is not an essential of the crime charged, *People* v. *Gallardo, supra,* 41 Cal.2d 57; *People* v. *Califro,* 120 Cal.App.2d 504 [261 P.2d 332]) may be proven by hearsay evidence of the declarations of the abortee, they further establish that the fact of an abortion may not be proven by such hearsay. The most that can be said for the evidence upon this count is that the appellant participated in arranging for an abortion, that Choy took Bai to appellant's office for the purpose of an abortion, but there is no evidence that anyone administered to Bai any medicine, drug or substance or used or employed an instrument or other means upon her with the intent to procure a miscarriage, and without such proof the elements of the offense are entirely lacking. (Pen. Code, § 274.)

Appellant alleges that the court erred in denying his motion

made under section 995 of the Penal Code to set aside the information insofar as counts V, VI and VII are concerned. The evidence received at the preliminary hearing as to count V was in substance the same evidence as was received at the trial and what we have heretofore said as to the sufficiency of the evidence to uphold the conviction under count V, fully answers the present contention.

As to counts VI and VII, appellant's real contention is that inasmuch as Jordan alone was charged with the commission of the offense set forth in these counts, that these counts were improperly joined with the others. There is no doubt that these two counts were improperly joined (see *People* v. *Davis,* 42 Cal.App.2d 70 [108 P.2d 85] ; *People* v. *O'Connor,* 81 Cal.App. 506 [254 P. 630] ; *People* v. *Foward,* 134 Cal.App. 723 [26 P.2d 532]) with the others, but misjoinder is not one of the grounds upon which the information may be attacked under section 995 of the Penal Code. That objection to the information may be only raised by demurrer (Pen. Code, § 1004, subd. 3.) By failing to demur, appellant waived the misjoinder (Pen. Code, § 1012). Further, appellant was not injured by the joinder of these two counts by which he is not charged. The evidence received under each of these other counts was evidence as to further attempts to abort Serdonov and directly connected with the abortion alleged in count V. The prosecution would therefore have been entitled to prove them as overt acts under count I of the information even though they were not charged as overt acts therein (Pen. Code, § 1104). It is thus evident that appellant did not suffer prejudice by the joinder.

We have examined all other claims of error asserted by the appellant but find all of them without merit.

The judgment finding the appellant guilty as to count VIII and the order denying his motion for new trial on that count are reversed. The judgment finding appellant guilty upon all other counts and the order denying the motion for new trial upon those counts are affirmed.

Fourt, Acting P. J., concurred.

Lillie, J., deeming herself disqualified, did not participate.

A petition for a rehearing was denied October 6, 1959, and appellant's petition for a hearing by the Supreme Court was denied November 18, 1959.